**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PATRICK BROOKS, derivatively on behalf of COMMVAULT SYSTEMS, INC., | ) | Case No. |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| NICOLA ADAMO, MARTHA BEJAR, KEITH GEESLIN, VIVIE "YY" LEE, CHARLES "CHUCK" MORAN, ALLISON PICKENS, SHANE SANDERS, ARLEN SHENKMAN, SANJAY MIRCHANDANI, AND JENNIFER DIRICO, | ) | |
| Defendants, | ) | |
| -and- | ) | |
| COMMVAULT SYSTEMS, INC., a Delaware Corporation, | ) | |
| Nominal Defendant. | ) | |

Plaintiff Patrick Brooks ("Plaintiff"), derivatively on behalf of Commvault Systems, Inc. ("Commvault" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and

belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Enrique Imbert v. Commvault Systems, Inc. et al* (D. N.J. Case No. 3:26-cv-05654) (the "Securities Class Action); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

## NATURE OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of Commvault, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least April 29, 2025, to January 26, 2026 (the "Relevant Time Period"). During that time the Defendants (as defined herein) caused or allowed Commvault to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2. Defendants caused the Company to provide investors with material information concerning Commvault's projected Annually Recurring Revenue ("ARR") growth for fiscal year 2026. These statements included, among other things, misleading guidance and projections regarding the Company's new net ARR growth.

3. Defendants made these overwhelmingly positive representations to investors while simultaneously issuing materially false and misleading statements

and/or omitting material adverse facts regarding the true state of Commvault's ARR growth environment. In particular, Defendants knew, or recklessly disregarded, that the Company's ARR growth guidance failed to adequately account for critical variables, including the type of sale.

4. The truth emerged on January 27, 2026, when Commvault announced its financial results for the third quarter of fiscal year 2026, reporting ARR growth below the guidance previously provided by the Company. Specifically, Commvault reported third quarter 2026 ARR growth of $39 million, well below the Company's projected $45 million.

5. Investors and analysts reacted immediately to the disclosure. Following the announcement, Commvault's stock price declined sharply, falling from a closing price of $129.36 per share on January 26, 2026, to $89.13 per share on January 27, 2026, representing a decline of more than 31% in a single trading day.

6. Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements in breach of their fiduciary duties to the Company.

## PARTIES

### A. Plaintiff

7. Plaintiff Patrick Brooks is a current shareholder of Commvault and has continuously held Commvault stock during all times relevant hereto and is

committed to retaining Commvault shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Commvault and its shareholders in enforcing its rights.

**B. Nominal Defendant**

8. Nominal Defendant Commvault is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1 Commvault Way, Tinton Falls, New Jersey 07724. Commvault common stock trades on the Nasdaq Global Select Market (the "NASDAQ") under the symbol "CVLT."

**C. Individual Defendants**

9. Defendant Sanjay Mirchandani has served as President, CEO, and a director of the Company since 2019.

10. Defendant Nicola Adamo has been a director of the Company since 2018 and has been the Chairman of the Board since 2019.

11. Defendant Martha Bejar has been a director of the Company since 2018.

12. Defendant Keith Geeslin has been a director of the Company since 1996.

13. Defendant Vivie "YY" Lee has been a director of the Company since 2021.

14. Defendant Charles "Chuck" Moran has been a director of the Company since 2018.

15. Defendant Allison Pickens has been a director of the Company from 2020 until October of 2025.

16. Defendant Shane Sanders has been a director of the Company since 2020 and is the Chairman of the Audit Committee.

17. Defendant Arlen Shenkman has been a director of the Company since 2022.

18. Defendants Adamo, Bejar, Geeslin, Lee, Mirchandani, Moran, Pickens, Sanders, and Shenkman. are herein referred to as "Director Defendants."

19. Defendant Jennifer DiRico was the CFO of the Company from 2024 until December 2025.

20. Defendants Mirchandani and DiRico are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

22. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

23. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this court under 28 U.S.C. § 1391, because Commvault is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Company Background

25. Commvault is a data protection company that provides data protection, cyber resilience solutions, and management software for hybrid and multi cloud environments.

### B. Commvault's False and Misleading Statements

**<u>Commvault's Fiscal Year 2026 ARR Growth Guidance April 29, 2025</u>**

26. On April 29, 2025, Defendants provided investors with favorable guidance concerning Commvault's anticipated fiscal year 2026 performance. Specifically, Defendant Mirchandani stated:

> It was a record-breaking year at Commvault. Commvault surpassed all key metrics, ended the year with over 12,000 subscription customers, and is firmly positioned as a growth company with subscription revenue up 45% in Q4. We continue to deliver cloud-first innovations that solve a hard problem for customers – strengthening their cyber resilience.

27. That same day, Defendants participated in an earnings conference call with analysts and investors during which Defendants reiterated the Company's fiscal year 2026 ARR growth guidance and made overwhelmingly positive statements regarding Commvault's growth outlook. Defendant DiRico announced:

> Now I'm happy to share our initial FY '26 outlook. We expect fiscal year '26 total ARR growth of 16% to 17% year-over-year. This will be driven by subscription ARR, which we expect to increase in the range of 22% to 23% year-over-year. Beginning in FY '26, we will report ARR on both a reported and an FX-adjusted basis using rates as of March 31, 2025. For a historical comparison, please refer to Page 27 of our Q4 earnings presentation, which includes FY '25 ARR rebased using these same rates. From a full year fiscal '26 revenue perspective, we expect subscription revenue to be in the range of $727 million to $732 million, growing 24% at the midpoint with strong contribution from both term software licenses and SaaS. We expect total revenue of $1.13 billion to $1.14 billion, an increase of 14% at the midpoint.

**July 29, 2025**

28. On July 29, 2025, Commvault issued a press release and conducted an accompanying earnings call announcing the Company's financial results for the first quarter of fiscal year 2026. During the call, Defendant Mirchandani made positive statements regarding Commvault's business performance and future prospects. In particular, Mirchandani stated:

> Commvault delivered a strong start to the fiscal year, fueled by customer growth, disciplined execution, and rising demand for our industry-leading cyber resilience platform. With a best-in-class partner ecosystem and continuous innovation that we believe sets us apart, we are well-positioned to continue to take share in fiscal 2026 and beyond.

29. Through these statements, Defendants represented to investors that Commvault was experiencing strong demand, executing effectively, and positioned to sustain continued growth throughout fiscal year 2026 and beyond.

30. During the accompanying earnings call, Defendant DiRico provided investors with Commvault's outlook for the second quarter and updated guidance for fiscal year 2026. In relevant part, DiRico stated:

> Now I'll discuss our outlook for Q2 and our updated outlook for fiscal year '26. For fiscal Q2 '26, we expect subscription revenue, which includes both the software portion of term-based licenses and SaaS to be in the range of $174 million to $176 million. This represents 31% year-over-year growth at the midpoint. We expect total revenue to be in the range of $272 million to $274 million, with growth of 17% at the midpoint. At these revenue levels, we expect Q2 consolidated gross margins to be in the range of 81% to 82%. We expect Q2 non-GAAP EBIT margins of approximately 20%, including the integration of Satori Cyber.

> Now I'm happy to share that we are raising our fiscal year 2026 guidance. As a reminder, ARR guidance is in constant currency using FX rates as of March 31, 2025. For a historical comparison, please refer to our Q1 earnings presentation. We expect constant currency FY '26 total ARR growth of 18% year-over-year. This will be driven by subscription ARR, which we expect to increase by 24% year-overyear. From a full year fiscal '26 revenue perspective, we expect subscription revenue to be in the range of $753 million to $757 million, growing 28% at the midpoint with strong contributions from both term software licenses and SaaS. We expect total revenue of $1.161 billion to $1.165 billion, an increase of 17% at the midpoint.

31. Also, during the earnings call, Defendant DiRico responded to questions from analysts participating on the call. Relevant portions of DiRico's statements included:

> <Q: Rudy Grayson Kessinger - D.A. Davidson & Co. – Analyst> Very strong results all around. I want to dig into maybe just the net new ARR in Q1. It does look like it's skewed much more towards term license Case 3:26-cv-05654 Document 1 Filed 05/18/26 Page 8 of 32 PageID: 8 9 relative to SaaS just versus the trend over last year, very strong term license net new ARR. Anything to call out there in terms of how deal dynamics shaped up? Or any color on maybe what was a bit weaker of a SaaS net new ARR quarter?
>
> <A: Jennifer DiRico> Yes. So first of all, I would say our SaaS business performed as expected and in line, and we're very pleased with that. the delta did come from overperformance in the software side of things. At the very, very end of the quarter, we did benefit from higher close rates on a few software deals. As it relates to as we think about the SaaS business overall and overall net new ARR on a quarterly basis, we believe going forward that you can see north of $20 million in the SaaS net new ARR. And then on the go forward, around $40 million total net new ARR quarter-over-quarter for the remaining of the year.

**December 4, 2025**

32. On December 4, 2025, Commvault issued a press release announcing that Defendant Jennifer DiRico, the Company's Chief Financial Officer, would be leaving the Company at the end of the calendar year. The press release stated:

> As part of this transition, Sanjay Mirchandani, Commvault's President and CEO, will assume oversight of a newly established Office of the CFO comprised of Kevin White, Vice President of Finance, and Danielle Abrahamsen, Chief Accounting Officer, until the new CFO is in place.

**October 28, 2025**

33. On October 28, 2025, Commvault issued a press release and held a corresponding earnings call announcing the Company's financial results for the second quarter of fiscal year 2026. During the call, Defendant Mirchandani made positive statements regarding Commvault's performance and outlook. Mirchandani stated:

> Commvault delivered a strong quarter fueled by solid ARR and SaaS growth that accelerated a key milestone for the company – achieving $1 billion in total ARR – two quarters earlier than projected. As enterprises globally rely on Commvault to be resilient, our cloud-first, AI-enabled cyber resilience platform is more relevant than ever.

34. During the accompanying earnings call, Defendant DiRico provided Commvault's outlook for the third quarter and updated guidance for fiscal year 2026. DiRico stated:

> Now I'll discuss our Q2 results and operating metrics followed by an update on Q3 and FY '26 guidance. Please note that all growth rates are

on a year-over-year basis unless otherwise specified. On a reported basis, total annual recurring revenue increased by 22% to $1.04 billion or 21% on a constant currency basis. Subscription ARR increased 30% to $894 million, representing 29% growth on a constant currency basis. This was led by 56% growth in SaaS ARR to $336 million. And I'm excited to share that we exceeded our original $330 million SaaS ARR target 2 quarters earlier than planned. Subscription ARR now constitutes 86% of total ARR compared to 81% 1 year ago. Subscription ARR is the best indicator of the company's growth.

* * *

Now I'll discuss our updated fiscal year 2026 guidance. As a reminder, ARR guidance is in constant currency using FX rates as of March 31, 2025. For a historical comparison, please refer to Page 30 of our Q2 earnings presentation. We now expect constant currency fiscal '26 total ARR growth of 18% to 19% year-over-year. This will be driven by subscription ARR, which we now expect to increase by 24% to 25% year-over-year. That represents an increase of 50 basis points at the midpoint for both metrics.

From a full year fiscal '26 revenue perspective. We continue to expect subscription revenue to be in the range of $753 million to $757 million, growing 28% at the midpoint. Our guidance assumes a continued shift in term duration during the second half of the year. We reiterate total revenue of $1.161 billion to $1.165 billion, an increase of 17% at the midpoint.

Moving to our full year fiscal '26 margin, EBIT and cash flow outlook. We now expect gross margins to be 80.5% to 81.5%. This range reflects continued growth in our SaaS platform, which carries a different gross margin profile than software. We now expect non-GAAP EBIT margins of approximately 18.5% to 19.5%.

Non-GAAP EBIT margins reflect our ongoing investments in additional growth driving initiatives. We are raising our full year free cash flow outlook to a range of $225 million to $230 million. This guidance reflects benefits from recent federal tax law changes.

35. Defendant DiRico also responded to questions from analysts in attendance during the earnings call. DiRico stated:

> <Q: Rudy Grayson Kessinger - D.A. Davidson & Co – Analyst> Congrats on a strong quarter. When I look at ARR which obviously matters much more than revenue. Obviously, record net new ARR, and by my math, organic ARR growth at constant currency accelerated a point to 19%. Jen, you talked about ongoing investments in growth initiatives as part of the reason for the EBIT margin guidance coming down in addition to the gross margin compression. Could you just talk about where you're making those incremental investments? And could we see further ARR growth acceleration over the next year or so as a result of those investments?
>
> <A: Jennifer DiRico> Yes, sure. So let me start by saying what we did was continue to keep operating expenses at about 61% of revenue that's consistent with prior quarter and prior year. The overall gross margin pressure that we saw really came down to the fact that our SaaS business continues to accelerate, which as we all know is a -- is a great thing and ultimately just has a different margin profile. And then overall, the Shift in term duration. So ultimately, this quarter, the pressure really came down to gross margin. As we think about the back half of the year, ultimately, what I would say to you is the investments we started out with the year in terms of continuing to accelerate our SaaS motion, right? We're still making those plays. As evidenced by the guidance for the back half of the year implies a $45 million of net new ARR on a constant currency basis, which, as you remember, is above that $40 million that I first started the year with. And so ultimately, our investments are paying off, and we're going to continue to [execute] it.

36. The statements described above were materially false and misleading because they created the impression that Commvault’s ARR growth would remain stable throughout fiscal year 2026. In truth, Defendants knew, or recklessly disregarded, that the Company’s ARR growth guidance failed to properly account

for the effect that different types of sales would have on ARR growth. Specifically, variation in net new ARR growth was significantly influenced by the type of sale Commvault generated, meaning the Company's projected net new ARR could not reasonably be determined without adequately considering sale type.

**C. The Truth is Revealed**

**January 27, 2026**

37. On January 27, 2026, Commvault issued a press release and held a corresponding earnings call announcing the Company's financial results for the third quarter of fiscal year 2026. During the call, Defendant Mirchandani made statements concerning Commvault's performance and outlook. Mirchandani stated:

> Commvault delivered another quarter of healthy growth and profitability driven by record customer engagement and adoption. Customers and partners are turning to Commvault because they require an AI-enabled platform that addresses rapidly evolving identity and emerging threats, supports compliance, and brings resilience to hybrid and multi-cloud environments.

38. During the accompanying earnings call, Danielle Abrahamsen, Commvault's Chief Accounting Officer, presented the Company's new ARR results for the third quarter of fiscal year 2026. Abrahamsen stated:

> Now I'll discuss ARR. Subscription ARR, which we believe is the best indicator of the company's health and growth increased 28% to $941 million. This was driven by 40% growth in SaaS ARR to $364 million. Subscription ARR now represents 87% of total ARR compared to 83% 1 year ago. Total ARR increased by 22% to $1.085 billion. Existing customer expansion was healthy in Q3, with SaaS net dollar retention of 121%, consistent with best-in-class SaaS platforms.

39. During the question-and-answer portion of the earnings call, Defendants responded to questions from analysts. Defendants stated:

> <Q: Aaron Christopher Rakers - Wells Fargo Securities – Analyst> I have two, if I can, real quick. First, I was wondering if you could unpack the -- I guess it's the free cash flow, but particularly the accounts receivable increase and the DSO increase in the quarter. I know you had alluded to later in the quarter kind of receivable collection. So can you unpack that, just help me understand why DSO has gone up so much and what you saw towards the end of the quarter, just given linearity.
>
> <A: Danielle Abrahamsen> Yes. Aaron, this is Danielle. Good to talk to you again. So I know I talked about this in my prepared remarks, and you kind of hit on it, right? But one of the things we saw this quarter, and it's not uncommon in Q3, I'll be honest. Q3 has a tendency to be one of our most pressured free cash flow quarters. And it's really just because of the way the sales cycles work with the calendar year-end, we have a tendency to see more deals close in the last few weeks of the quarter and this quarter was no exception to that. I can tell you, over 60% of our deals actually closed in the last few weeks of the quarter. And so what you see in free cash flow is really the reflection of that.
>
> The other thing I'll call out is we had an additional payroll cycle for both the U.S. and Canada. That's not normal for us in a quarter. And obviously, the U.S. is one of our largest payrolls, right? So both of those things are putting pressure on free cash flow. I do want to highlight our free cash flow guidance for the year, if you normalize for the onetime payments that we're making in Q4 tied to the cost optimization program remains unchanged.
>
> * * *
>
> <Q: Jason Noah Ader William - Blair & Company – Analyst> Okay. I got you. All right. And then the net new ARR, I think constant currency was for total net new ARR was $39 million. I believe on the last earnings call, you guys talked about mid-40s. So just wanted to

understand, was that below what your expectations were? And if so, why?

<A: Danielle Abrahamsen> Yes. So let me unpack that a little bit, right? So -- and as we mentioned on the call, we had a really strong new customer quarter. It was actually our top term software new customer quarter and our second highest customer acquisition quarter for SaaS. For SaaS, in particular, I will tell you, 70% of our net new ARR was driven by SaaS. As a reminder, we land those customers at lower ASPs, on average, typically 2 to 3x what we would land a software customer with. And so what you're seeing in the ARR is just a reflection of that math. We're still very happy about that because what that does is give us the opportunity to go out, cross-sell and gain further value with those customers. The other comment I'll make is going back to the software land piece, we have a tendency to land those customers at a longer duration. So that does have some modest dilution on ARR.

<Q: Jason Noah Ader> Okay. I guess what I'm getting at, guys, is just what was the delta versus the $45 million that you guys had talked about you ended up with $39 million, something must have not played out as you expected? Yes. So this is Sanjay. Jason, it's really just -- we sold a lot of SaaS deals, land deals this quarter. And when you -- that's why you have to look at it on an annual basis because there will be variation quarter-to-quarter. We sell a lot of software, and it was also a big software land quarter for us. So when you take -- you take that together, it's -- that kind of explains the delta, if you would. But by every stretch of the imagination, it was a very strong quarter.

<A: Danielle Abrahamsen> And Jason, let me just add a little bit more with the numbers, too, which I think might help last quarter for perspective. 61% of our net new ARR was SaaS. This quarter, that's 70%. Again, when you're talking landing these customers at a 2 to 3x smaller ASP than software, that does have a significant impact on ARR.

<Q: Jason Noah Ader> Got you. Okay. So the explanation, if I can summarize is just you're seeing a bigger shift to SaaS than maybe you expected at the beginning -- when you gave the guidance and that had an impact on the number.

40. The foregoing press releases and statements made by the Individual Defendants, or concerning the Company, sharply contradicted Defendants' prior public statements during the Class Period. Throughout the Class Period, Defendants repeatedly represented to investors that Commvault's new ARR growth remained strong and that the Company continued to raise or maintain its guidance on a quarter-to-quarter basis.

41. Analysts reacted with surprise and concern to the Company's ARR growth miss. In particular, CFRA downgraded Commvault shares to "Hold" from "Buy" and reduced its price target to $101 from $172.

42. Mizuho also issued a report lowering its price target on Commvault to $140 from $180 and stated:

> CVLT reported an underwhelming F3Q, as total net new ARR of $39M fell short of mgmt's ~$40-45M range. Mgmt attributed the ARR shortfall primarily to a growing SaaS net new ARR mix shift (while a favorable dynamic for CVLT's business, these deals carry much lower ASPs), along with longer duration on new term-based deals. CVLT also slightly lowered its full-year ARR guide.

43. DA Davidson also issued a report lowering its price target on Commvault to $135 from $185 and stated:

> Reasons Given For ARR Miss Leave Many With Questions: Mgmt. attributed the ARR miss to two dynamics: 1) a higher mix of NNARR coming from SaaS & the fact that SaaS deals typically land smaller than Term-License deals, and 2) a higher mix of new logo Term-License deals than expected, which carry longer duration & come with some price concessions for that longer duration, which has a negative impact on ARR as it is calculated as TCV / duration. With respect to #1, last

> qtr., mgmt. said they expected SaaS to be ~60% of 2H NNARR. If the real range for FQ3 should have been $40-45M, the expectation for FQ3 SaaS NNARR was thus ~$25.5M. FQ3 SaaS NNARR was $27.1M, a bit ahead of that figure. For this ~$1.6M of SaaS NNARR upside to have resulted in an overall negative impact to total NNARR, one has to conclude that this SaaS NNARR upside came at the expense of an even larger pool of Term-License NNARR that could have been signed instead. The problem is there are very few, if any, deals in the pipeline where a customer is unsure if they want to purchase Term-License or SaaS, because customers predominantly purchase Term-Licenses to protect on-premise data & SaaS to protect cloud/SaaS data. So, for this explanation to hold water, one has to believe that this ~$1.6M SaaS NNARR upside in some way prohibited reps from closing TermLicense deals with other customers in the quarter. Maybe, though CVLT has shown both SaaS & Term-License NNARR upside in the same quarter before, so maybe not. With respect to #2, new logo TermLicense deals do carry longer duration than Term-License cross-sell deals (~3-4 years vs. ~1-2 years), and there are some price concessions given on those deals. These price concessions are just ~2-5% per mgmt., so it's hard to see how that could lead to a NNARR shortfall that is anywhere close to what it was. These explanations do not seem to have been enough for investors, who by & large are still concluding there must have been some other deals that pushed or were otherwise lost.

44. The market responded negatively to Commvault's disclosure, with investors and analysts expressing concern over the Company's results. Following the announcement, Commvault's common stock price dropped significantly, declining from a closing price of $129.36 per share on January 26, 2026, to $89.13 per share on January 27, 2026, a decrease of more than 31% in a single day.

**D. Defendants' Misconduct Has and Continues to Harm the Company**

45. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not

limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

46. Commvault's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E. Commvault Issues False and Misleading Proxy Statements**

47. In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statement issued on June 25, 2025 (the "Proxy"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

48. The Director Defendants drafted, approved, reviewed, and/or signed the Proxy before they were filed with the SEC and disseminated to Commvault's stockholders. The Director Defendants negligently issued materially misleading statements in the Proxy. These allegations are based solely on negligence; they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the Proxy allegations and related claims.

49. In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the Proxy. The Proxy stated:

> The Board oversees Commvault's policies and procedures relating to enterprise risk. This involves understanding the risks the Company faces and the steps management is taking to manage those risks, and also considering what level of risk is appropriate for our Company.
>
> The Board's involvement in overseeing Commvault's business strategy informs its assessment of management's risk tolerance and its determination of an appropriate level of risk. The Board of Directors considers risk management to varying degrees regularly at its meetings. The Board adjusts its practices with respect to risk oversight as necessary and involves itself in particular areas or business circumstances where the proper exercise of oversight requires it. The Board and senior management may engage outside advisors for risk assessment where warranted.
>
> While the Board has ultimate oversight responsibility for the risk management process, the Board's standing committees also have responsibility for risk assessment and risk management with respect to matters in their purview.
>
> ***
>
> At the management level, our CFO and Chief Trust Officer oversee riskrelated matters. In addition, we have established disclosure controls to monitor our compliance with securities disclosure obligations and an executive review committee to monitor and approve certain transactions or other corporate matters that deviate from our standard practices. Senior management reports to the Board or an appropriate Board committee regarding risk issues.
>
> The ERMC [Enterprise Risk Management Committee], is responsible for the implementation, maintenance, and execution of our enterprise risk management program. The ERMC meets quarterly, or as needed, to assess, consider, and manage material risks including cybersecurity threats across the business.

> Under our Corporate Governance Policies, the Board has complete and open access to any member of management and any employee, as well as any outside advisor or independent advisor retained by the Board, to inquire about risk-related (or other) topics. In addition, our CFO and Chief Trust Officer are available at Board and committee meetings to answer questions relating to risk oversight. Further, because the CEO is a director, he brings a unique perspective on our risk profile and risk assessment to Board deliberations based on his day-to-day management, responsibilities and knowledge about the Company

50. The Proxy thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements as follows: (a) Defendants represented that Commvault's ARR growth would remain strong and consistent throughout fiscal year 2026; (b) Defendants repeatedly issued positive ARR guidance and projected continued net new ARR growth; (c) Defendants portrayed Commvault as experiencing strong customer demand, disciplined execution, and sustained business momentum; (d) Defendants failed to disclose that ARR growth was significantly impacted by the type of sales generated, including SaaS and longer duration term license deals; and (e) Defendants knew, or recklessly disregarded, that these sales

types negatively affected net new ARR calculations and rendered the Company's ARR guidance materially misleading.

51. As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F. The Board Breached its Fiduciary Duties**

52. As officers and/or directors of Commvault, the Defendants owed Commvault fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Commvault in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Commvault, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

53. Defendants, because of their positions of control and authority as directors and/or officers of Commvault, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Commvault's financial condition, performance, growth, operations, financial statements, business, management,

earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

54. To discharge their duties, the officers and directors of Commvault were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Commvault were required to, among other things:

(a) Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b) Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d) Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's

financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f) Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g) Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

55. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their

duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

56. The Board's Audit Committee is tasked with overseeing Commvault's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Commvault's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- overseeing the integrity of Commvault's financial statements and financial reporting processes, including ARR reporting and related disclosures;
- reviewing audit results, critical accounting policies and practices, and the adequacy of disclosure controls and procedures;
- overseeing the Company's compliance with legal and regulatory requirements;
- overseeing the performance of the internal audit function and independent auditor; and
- overseeing management of significant financial risk, including risks associated with financial guidance and reporting.

57. In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Sanders, Bejar, Pickens, and Moran (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete

failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

58. In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

59. The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Commvault.

## DERIVATIVE ALLEGATIONS

60. Plaintiff brings this action derivatively in the right and for the benefit of Commvault to redress injuries suffered by Commvault as a direct result of the Director Defendants' breaches of fiduciary duty. Commvault is named as a nominal

defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

61. Plaintiff will adequately and fairly represent the interests of Commvault in enforcing and prosecuting the Company's rights.

62. Plaintiff was a stockholder of Commvault at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Commvault stockholder.

## DEMAND FUTILITY ALLEGATIONS

63. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

64. The Commvault Board currently has eight members: Adamo, Bejar, Geeslin, Lee, Mirchandani, Moran, Sanders, and Shenkman.

65. Plaintiff has not made any demand on Commvault's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A. Defendant Adamo Lacks Independence Because He Faces a Substantial Likelihood of Liability

66. As alleged above, Defendant Adamo breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Adamo faces a substantial likelihood of

negligence liability for issuing the Proxy and any demand upon Defendant Adamo is therefore futile.

67. Defendant Adamo faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Adamo breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Adamo had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

68. In addition, Defendant Adamo owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Adamo knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

69. Defendant Adamo's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take

necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Adamo facing a substantial likelihood of liability. If Defendant Adamo were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, he would expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Adamo.

**B. Defendant Bejar Lacks Independence Because She Faces a Substantial Likelihood of Liability**

70. As alleged above, Defendant Bejar breached her fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting her reelection to the Board. Accordingly, Defendant Bejar faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Bejar is therefore futile.

71. Defendant Bejar faces a substantial likelihood of liability for her individual misconduct. As alleged above, Defendant Bejar breached her fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Bejar had a duty to ensure that the Company's SEC filings, press releases, and other public statements and

presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

72. In addition, Defendant Bejar owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Bejar knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

73. Defendant Bejar's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Bejar facing a substantial likelihood of liability. If Defendant Bejar were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, she

would expose herself and her colleagues to significant liability. For this reason, demand is futile as to Defendant Bejar.

**C. Defendant Geeslin Lacks Independence Because He Faces a Substantial Likelihood of Liability**

74. As alleged above, Defendant Geeslin breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Geeslin faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Geeslin is therefore futile.

75. Defendant Geeslin faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Geeslin breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Geeslin had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

76. In addition, Defendant Geeslin owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead,

Defendant Geeslin knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

77. Defendant Geeslin's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Geeslin facing a substantial likelihood of liability. If Defendant Geeslin were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, he would expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Geeslin.

**D. Defendant Lee Lacks Independence Because She Faces a Substantial Likelihood of Liability**

78. As alleged above, Defendant Lee breached her fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting her reelection to the Board. Accordingly, Defendant Lee faces a substantial likelihood

of negligence liability for issuing the Proxy and any demand upon Defendant Lee is therefore futile.

79. Defendant Lee faces a substantial likelihood of liability for her individual misconduct. As alleged above, Defendant Lee breached her fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Lee had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

80. In addition, Defendant Lee owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Lee knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

81. Defendant Lee's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and

appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Lee facing a substantial likelihood of liability. If Defendant Lee were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, she would expose herself and her colleagues to significant liability. For this reason, demand is futile as to Defendant Lee.

### E. Defendant Moran Lacks Independence Because He Faces a Substantial Likelihood of Liability

82. As alleged above, Defendant Moran breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Moran faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Moran is therefore futile.

83. Defendant Moran faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Moran breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Moran had a duty to ensure that the Company's SEC filings, press releases, and other public statements and

presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

84. In addition, Defendant Moran owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Moran knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

85. Defendant Moran's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Moran facing a substantial likelihood of liability. If Defendant Moran were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, he would

expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Moran.

**F. Defendant Pickens Lacks Independence Because She Faces a Substantial Likelihood of Liability**

86. As alleged above, Defendant Pickens breached her fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting her reelection to the Board. Accordingly, Defendant Pickens faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Pickens is therefore futile.

87. Defendant Pickens faces a substantial likelihood of liability for her individual misconduct. As alleged above, Defendant Pickens breached her fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Pickens had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

88. In addition, Defendant Pickens owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead,

Defendant Pickens knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

89. Defendant Pickens's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Pickens facing a substantial likelihood of liability. If Defendant Pickens were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, she would expose herself and her colleagues to significant liability. For this reason, demand is futile as to Defendant Pickens.

### G. Defendant Sanders Lacks Independence Because He Faces a Substantial Likelihood of Liability

90. As alleged above, Defendant Sanders breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Sanders faces a substantial likelihood of

negligence liability for issuing the Proxy and any demand upon Defendant Sanders is therefore futile.

91. Defendant Sanders faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Sanders breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Sanders had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

92. In addition, Defendant Sanders owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Sanders knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

93. Defendant Sanders's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take

necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Sanders facing a substantial likelihood of liability. If Defendant Sanders were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, he would expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Sanders.

### H. Defendant Shenkman Lacks Independence Because He Faces a Substantial Likelihood of Liability.

94. As alleged above, Defendant Shenkman breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Shenkman faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Shenkman is therefore futile.

95. Defendant Shenkman faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Shenkman breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Shenkman had a duty to ensure that the Company's SEC filings, press releases, and other public statements and

presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

96. In addition, Defendant Shenkman owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Shenkman knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

97. Defendant Shenkman's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Shenkman facing a substantial likelihood of liability. If Defendant Shenkman were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct,

he would expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Shenkman.

**I. Defendant Mirchandani is not Independent**

98. Defendant Mirchandani is the President, CEO, and a director of Commvault. Defendant Mirchandani received compensation of $12,631,000.00 in the prior fiscal year. Defendant Mirchandani depends on Commvault for his income. In addition, Commvault stated in the Proxy that he is not independent pursuant to SEC and NYSE rules.

99. Additionally, as alleged above, Defendant Mirchandani breached his fiduciary duties by negligently issuing the materially false and misleading Proxy soliciting his reelection to the Board. Accordingly, Defendant Mirchandani faces a substantial likelihood of negligence liability for issuing the Proxy and any demand upon Defendant Mirchandani is therefore futile.

100. Defendant Mirchandani faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Mirchandani breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Mirchandani had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

101. In addition, Defendant Mirchandani owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Mirchandani knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Commvault.

102. Defendant Mirchandani's making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in Defendant Mirchandani facing a substantial likelihood of liability. If Defendant Mirchandani were to bring a suit on behalf of Commvault to recover damages sustained as a result of this misconduct, he would expose himself and his colleagues to significant liability. For this reason, demand is futile as to Defendant Mirchandani.

### J. The Audit Committee Defendants are not Disinterested Because They Were Members of the Committee Responsible for Overseeing Financial Reporting

103. One of the Audit Committee's responsibilities is risk management. The Audit Committee was thus responsible for reviewing and approving Commvault's Forms 10-Q and 10-K filed during the Relevant Time Period. The Audit Committee Defendants were members of the Audit Committee during the relevant time period and were thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through their knowledge or reckless disregard, the Audit Committee Defendants caused improper statements by the Company. Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the misconduct described above. They face a substantial likelihood of liability for these breaches, making any demand on them futile.

104. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Derivatively Against the Director Defendants)

105. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

106. Each of the Defendants owed and owes Commvault the highest obligations of loyalty, good faith, due care, and oversight.

107. Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

108. The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

109. In addition, the Director Defendants further breached their fiduciary duties owed to Commvault by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose as follows: (a) Defendants represented that Commvault's ARR growth would remain strong and consistent

throughout fiscal year 2026; (b) Defendants repeatedly issued positive ARR guidance and projected continued net new ARR growth; (c) Defendants portrayed Commvault as experiencing strong customer demand, disciplined execution, and sustained business momentum; (d) Defendants failed to disclose that ARR growth was significantly impacted by the type of sales generated, including SaaS and longer duration term license deals; and (e) Defendants knew, or recklessly disregarded, that these sales types negatively affected net new ARR calculations and rendered the Company's ARR guidance materially misleading.

110. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

111. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed

knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

112. As a direct and proximate result of the breaches of duty alleged herein, Commvault has sustained and will sustain significant damages.

113. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

114. Plaintiff, on behalf of Commvault, has no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty**
**(Derivatively Against the Officer Defendants)**

115. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

116. The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Commvault the highest obligations of loyalty, good faith, due care, oversight, and candor.

117. The Officer Defendants breached their fiduciary duties owed to Commvault by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact as follows: (a) Defendants represented that Commvault's ARR growth would remain strong and

consistent throughout fiscal year 2026; (b) Defendants repeatedly issued positive ARR guidance and projected continued net new ARR growth; (c) Defendants portrayed Commvault as experiencing strong customer demand, disciplined execution, and sustained business momentum; (d) Defendants failed to disclose that ARR growth was significantly impacted by the type of sales generated, including SaaS and longer duration term license deals; and (e) Defendants knew, or recklessly disregarded, that these sales types negatively affected net new ARR calculations and rendered the Company's ARR guidance materially misleading.

118. The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

119. As a direct and proximate result of the breaches of duty alleged herein, Commvault has sustained and will sustain significant damages.

120. As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

121. Plaintiff, on behalf of Commvault, has no adequate remedy at law.

**COUNT III**
**<u>Violation of Section 14(a) of the Exchange Act</u>**
**(Against the Director Defendants)**

122. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

123. The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

124. The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the Proxy. In the Proxy, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

125. The Proxy, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Commvault misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

126. Plaintiff, on behalf of Commvault, thereby seeks relief for damages inflicted upon the Company based upon the misleading Proxy in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Commvault and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of Commvault for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding Commvault restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem

just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 29, 2026

Respectfully submitted,

**LYNCH CARPENTER, LLP**

*/s/ Gerald D. Wells, III*
Gerald D. Wells, III (SBN:040652001)
1760 Market Street, Suite 600
Philadelphia, PA 19103
T: 267-609-6910
F: 267-609-6955
jerry@lcllp.com

**BRIAN MURRAY LAW PLLC**
Brian P. Murray, Esq.
750 E. Main St., Suite 620
Stamford, CT 06902
T: 203-246-2368
bmurray@brianmurraylaw.com

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
T: 914-400-1920
F: 914-301-3514
srowley@rowleylawpllc.com
drl@rowleylawpllc.com

***Counsel for Plaintiffs***

**VERIFICATION**

I, Patrick Brooks, am the named plaintiff in the foregoing derivative action. I have read the foregoing Verified Stockholder Derivative Complaint, know the contents thereof, and authorized its filing. The contents alleged therein are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I further declare that I am a current holder, and have been a holder, of Commvault Systems, Inc., common stock during the time period in which the wrongful conduct alleged and complained of occurred.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of May 2026.

Patrick Brooks
Patrick Brooks (May 29, 2026 08:10:12 EDT)

Patrick Brooks